**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIETTE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1891 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007316-2022

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 31, 2025**

Juliette Williams appeals from the aggregate sentence of three and one-half to seven years in prison, followed by three years of supervision, arising from her convictions of involuntary deviate sexual intercourse ("IDSI"), sexual assault, and conspiracy to commit IDSI.  We affirm.

The trial court summarized the factual background of this case thusly:

[The victim in this matter, S.H.,] testified that she was arrested in May of 2022.  She was [seventeen] years old at the time.  S.H was initially detained at a juvenile facility but was transported to an adult facility in June of 2022.  While there, S.H. met [inmates] Appellant and co-defendant [Khayriyyah] Adams.  Appellant and Adams initially befriended S.H. but soon made sexual advances toward her.  Over time, Adams'[s] advances toward S.H. became more physical and overtly sexual.  S.H stated that Adams would sometimes grab her by the neck and kiss her.  When the complainant rejected Adams'[s] sexual advances, Appellant threatened her.

---

[*] Retired Senior Judge assigned to the Superior Court.

On [June 22, 2022,] as S.H. walked past Adams'[s] cell on her way to the showers [during inmate recreation time], Adams grabbed her and pulled her into the cell [that she shared with Appellant]. S.H. testified that Adams was positioned behind her, while Appellant was in front of her. According to S.H., Appellant stood guard as Adams pushed S.H. onto the bed and ripped open her jumpsuit. Adams then reached under Appellant's bed and produced an object, which she used to forcibly penetrate the complainant's vagina. [S.H. screamed during this portion of the encounter.] Adams then forced S.H to perform oral sex on her. Appellant remained outside of Adams'[s] cell as the assault unfolded and threatened S.H. afterward if she told anyone about the incident.

S.H. suffered vaginal bleeding as a result of the incident and eventually received medical attention. S.H. was reluctant to report the incident but told a juvenile caseworker what transpired [two days later,] after she was transported back to a juvenile facility[.]

Trial Court Opinion, 1/31/25, at 2-3.

Based on the above, the Commonwealth charged both Appellant and Adams with a litany of sexual offenses. In September 2023, Appellant entered into a negotiated guilty plea to one count each of IDSI and conspiracy to commit IDSI. In exchange, the Commonwealth recommended a sentence of one and one-half to three years in prison, followed by three years of probation, and withdrew the remaining charges. Following a written colloquy, the trial court accepted the plea and deferred sentencing so that a pre-sentence investigation report could be completed. However, five days later, Appellant requested to withdraw the guilty plea, which the court granted.

Accordingly, the charges were reinstated, and this matter proceeded to a consolidated bench trial. Before taking testimony, the trial judge recounted

on the record that he was the one who accepted Appellant's guilty plea and asked her if she sought recusal.  Appellant answered that she did not.  ***See*** N.T. Trial, 2/20/24, at 4.  In its case in chief, the Commonwealth introduced evidence that bore out the above facts.

Additionally, the prosecution admitted into evidence, over Appellant's objection, a photograph of a phallic-shaped object, described by the witnesses as a "dildo," assembled primarily from soap, gloves, and menstrual pads.  The testimony confirmed that this item was found in Appellant's cell in a different facility several weeks after the attack against S.H.  It was not the same item used to penetrate the victim during the underlying attack.

Neither Appellant nor Adams testified, though they vigorously cross-examined S.H.  Among other things, S.H. was asked about the fact that she was observed being intimate with Adams in the days leading up to the attack; her delay of two days in reporting the assault; the details concerning how close the stationed corrections officer was to Adams's cell during the encounter; how Adams's jumpsuit and other clothing were positioned during the forced oral sex; the fact that S.H. screamed but did not otherwise resist; and the seriousness of the crimes S.H. was facing while incarcerated, which included robbery and burglary.

At the conclusion of trial, the court found Appellant guilty of the above-referenced offenses, acquitting her of a number of other charges, including

rape, unlawful restraint, stalking, and recklessly endangering another person.[1] It later sentenced Appellant as indicated. Immediately following the sentencing hearing, Appellant learned that S.H. had, before trial, retained an attorney to prospectively lodge a civil suit against the jail facility where the assault took place. Appellant did not file a timely post-sentence motion.

This appeal followed. The trial court ordered Appellant to submit a statement of errors pursuant to Pa.R.A.P. 1925(b).[2] Before responding, Appellant filed a "*Nunc Pro Tunc* Petition," seeking a new trial on the basis that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to disclose S.H.'s retention of civil counsel. The docket reflects an entry from the court deeming Appellant's petition moot due to the pending appeal, and Appellant thereafter timely complied with the Rule 1925(b) order. The court authored a responsive Rule 1925(a) opinion addressing the merits of Appellant's claims, including a newly raised challenge to the weight of the evidence, and opining that it could take no action with respect to the **Brady** allegation.

In this Court, Appellant submitted an application to stay this appeal for counsel to file a petition pursuant to the Post Conviction Relief Act ("PCRA")

---

[1] The court likewise found Adams guilty of IDSI, sexual assault, and indecent assault.

[2] We remind the trial court that all Rule 1925(b) orders must provide, *inter alia*, "the address to which the appellant can mail the Statement" and "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived." Pa.R.A.P. 1925(b)(3)(iii-iv) (emphasis added).

asserting trial counsel's ineffectiveness in failing to promptly raise the ***Brady*** claim. We denied the application by order dated September 20, 2024. In her brief, Appellant raises four issues, which we have reordered for ease of disposition:

1.  The court's verdict was contrary to both the weight and sufficiency of the evidence presented at trial because it was based upon the uncorroborated testimony of the complainant;

2.  The trial court erred in presiding over Appellant's bench trial after previously accepting and later permitting Appellant to withdraw her guilty plea;

3.  The trial court erred in denying Appellant's [motion *in limine*] to exclude evidence of a prison-made dildo because the introduction of such evidence was more prejudicial than probative; and

4.  This court erred in failing to address an alleged ***Brady*** violation where the discovered evidence showed that the victim had retained a civil attorney arising out of the same issues at trial and a letter of representation sent to the Philadelphia District Attorney's Office was revealed to the defense after sentencing.

Appellant's brief at 11-12 (cleaned up).

In her first claim, Appellant raises both a challenge to the sufficiency of the evidence and an assertion that the verdicts were against the weight of the evidence, which are separate issues. ***See Commonwealth v. Rivera***, 238 A.3d 482, 495 (Pa.Super. 2020) (reiterating that "sufficiency and weight claims are distinct"). Beginning with Appellant's sufficiency claim, we preliminarily note that this "review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such

arguments are more properly characterized as challenges to weight of [the] evidence." *Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa.Super. 2022).

Appellant's sufficiency-related argument is terse and rests entirely upon her contention that S.H.'s testimony "was inconsistent and uncorroborated. She provided conflicting accounts of the time, location, and manner of the assault. [Further, n]o forensic evidence linked [Appellant] to the crime." Appellant's brief at 26. Appellant does not argue that the testimony was so untrustworthy as to render S.H.'s testimony inherently unbelievable. Thus, Appellant's sufficiency claim, which is based upon the victim's purported lack of credibility, is more aptly characterized as a challenge regarding the weight of the evidence.[3] *See Juray*, 275 A.3d at 1043.

Accordingly, we address this issue as one solely attacking the weight of the evidence. Critically, such claims must be preserved either before sentencing or by submitting a timely post-sentence motion. Our procedural rules specifically dictate:

_____

[3] Moreover, even if we were to address her sufficiency claim as is, we would find it waived for lack of development. Appellant fails to identify the particular crimes or elements of the crimes that were purportedly not proven by the Commonwealth at trial, and further does not include any citation to the record upholding her notion that S.H.'s testimony was inconsistent or provide any specific examples. *See* Pa.R.A.P. 2119(c) (requiring an appellant to make reference to the record in support of the argument section); *see also Commonwealth v. McIntyre*, 333 A.3d 417, 435 (Pa.Super. 2025) (stating that "it is not this Court's responsibility to try to guess an appellant's argument or piece the argument together for him" (citation omitted)).

A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A).

Our review of the record confirms that Appellant did not seek a new trial on the basis that the verdicts were against the weight of the evidence in a post-sentence motion or at any other point prior to this appeal. Indeed, she raised it for the first time in her Rule 1925(b) statement. In her brief, Appellant does not direct us to any part of the record demonstrating that she raised and properly preserved this claim. Hence, this issue is waived. *See*, *e.g.*, *Rivera*, 238 A.3d at 497 (noting that failing to properly preserve a weight claim "will result in waiver, even if the trial court addresse[d] the issue in its opinion").

Next, Appellant contends that the trial court erred in conducting her bench trial when it had previously accepted her guilty plea and was predisposed to certain facts relating to the case. *See* Appellant's brief at 24-25. To the contrary, both the trial court and the Commonwealth opine that this issue has been waived since Appellant never requested recusal prior to trial, and, in fact, specifically informed the trial judge that she did not want him to recuse. *See*, *e.g.*, Trial Court Opinion, 1/31/25, at 4-5; Commonwealth's brief at 16.

In general, "[o]ur standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are honorable, fair and competent, and . . . we employ an abuse of discretion standard[.]" ***Commonwealth v. Harris***, 979 A.2d 387, 391-92 (Pa.Super. 2009) (cleaned up). Regarding the timeliness of motions to recuse,

> [t]he law is clear. In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

***Commonwealth v. Blount***, 207 A.3d 925, 930-31 (Pa.Super. 2019) (citation omitted).

We conclude that Appellant is not entitled to relief on this claim. There is no indication in the record that she ever sought recusal from the trial judge at any point, let alone at "the earliest possible moment." ***Id***. at 930. As highlighted by the trial court, Appellant specifically informed the judge at the beginning of trial that she did **not** want the judge to recuse from the case. ***See*** N.T. Trial, 2/20/24, at 4. Since the request was not timely made, it is time-barred and waived. No relief is due.

In her next issue, Appellant asserts that the court erred in admitting a photograph depicting a phallic-shaped object that was recovered from her cell several weeks after the assault. ***See*** Appellant's brief at 21-22. "The admission of evidence is committed to the sound discretion of the trial court

and our review is for an abuse of discretion." ***Commonwealth v. Kane***, 188 A.3d 1217, 1229 (Pa.Super. 2018) (citation omitted).

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401. Evidence is excluded if its probative value is outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. This Court has explained that "all relevant Commonwealth evidence is meant to prejudice a defendant[,]" and therefore "exclusion is limited to evidence so prejudicial that it would inflame the [factfinder] to make a decision based upon something other than the legal propositions relevant to the case." ***Commonwealth v. Gonzalez***, 112 A.3d 1232, 1238 n.6 (Pa.Super. 2015) (cleaned up).

> Regarding admission of the photograph, the trial court recounted:
>
> In this case, a court of coordinate jurisdiction presided over a pre-trial [motion *in limine*] and ruled that the Commonwealth could introduce the photograph in question because it was both relevant and probative of the issue at hand - whether Appellant had made or had access to a dildo-like object similar to the one used to assault the complainant.
>
> It was clear from the testimony presented at trial, that the object found in Appellant's cell was not the same object used to assault S.H, and this court did not base its verdict on Appellant's mere possession of said object. This court based its verdict on the testimony of the complainant, whom it found credible. As a result, the probative value of the photo was not outweighed by any prejudice it may have caused the defense.

Trial Court Opinion, 1/31/25, at 6.

In response, Appellant avers that the photograph was inadmissible since it "served no legitimate evidentiary purpose other than to portray [her] as sexually deviant or morally corrupt." Appellant's brief at 22. She highlights that the item was "not recovered from the crime scene, did not contain the complainant's DNA, and was never identified as the object allegedly used during the assault." *Id*. at 21. Appellant also argues that because the item was made from things that are commonly accessible in the prison environment, it should not have been admitted to demonstrate her "unique expertise" in creating it. *Id*.

Upon review, we discern no abuse of discretion with the trial court's decision. The court correctly found that despite the picture showing an item that was not used in the charged crimes, it nonetheless provided evidence that Appellant had the means and ability to craft the object described by the victim. By extension, Adams, who was Appellant's cellmate at the time of the assault, would have had access to it. The testimony additionally established that Adams grabbed something akin to the recovered object from underneath Appellant's bed during the incident and used it to assault S.H. Moreover, the trial court clearly accepted the evidence for a limited purpose, which was to show potential access, not proof of use. Appellant is not entitled to relief on this claim.

In her final issue, Appellant maintains that the Commonwealth violated *Brady* by failing to disclose before trial that S.H. had hired counsel, potentially

to file a civil suit against the jail facility. *See* Appellant's brief at 22-24. This "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020) (citation omitted).

As our High Court has stated:

It is well-settled that *Brady* and subsequent precedent flowing therefrom imposes upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused. This Court has held that, to establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

*Id*. at 1084-85 (cleaned up). "Significantly, *Brady* claims are subject to waiver." *Commonwealth v. Holt*, 273 A.3d 514, 534 (Pa.Super. 2022) (citation omitted).

As discussed above, Appellant did not allege this violation prior to filing the instant notice of appeal, despite learning at sentencing of S.H.'s retention of counsel. Instead, she filed with the court a *nunc pro tunc* petition after this appeal commenced. The trial court expressed in its Rule 1925(a) opinion that it lacked jurisdiction to act on the petition. *See* Trial Court Opinion, 1/31/25, at 10. For its part, the Commonwealth argues that Appellant waived this issue and that, if not, the claim fails because Appellant could not demonstrate that

the information about S.H.'s retention of counsel was material. *See* Commonwealth's brief at 12-15.

We find no error with the trial court's conclusion that it lacked jurisdiction to entertain Appellant's petition. Our appellate rules state that "[e]xcept as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Furthermore, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Appellant's counsel conceded that he did not timely submit a post-sentence motion after learning of the information in question. *See* Application to Stay, 9/12/24, at unnumbered 2. By waiting until after appealing to first raise this purported violation, which was discovered at the time of sentencing, Appellant both waived the claim on direct appeal and deprived the trial court of the ability to consider *nunc pro tunc* relief. This is true even if we construe Appellant's petition as a request for a new trial based on newly discovered evidence. *See*, *e.g.*, Pa.R.Crim.P. 720 at cmt. (stating that "after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage," whereas that discovered "during the direct appeal process must be raised promptly during the direct appeal process").[4]

---

[4] Our decision does not foreclose Appellant's ability to seek appropriate relief pursuant to the PCRA.

In sum, based on the issues presented, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025